IN THE SUPERIOR COURT OF FULTON
COUNTY BUSINESS CASE DIVISION
STATE OF GEORGIA

| | |
|---|---|
| ALIERA HEALTHCARE, INC.<br><br>    Plaintiff/Counterclaim<br>    Defendant,<br><br>        V.<br><br>ANABAPTIST HEALTHSHARE;<br>and<br>UNITY HEALTHSHARE, LLC,<br><br>    Defendants/Counterclaimants,<br><br>ALEXANDER CARDONA; and<br>TYLER HOCHSTETLER,<br><br>    Defendants. | CIVIL ACTION FILE NO.<br>2018CV308981<br><br><br><br>Business Case Div. I<br><br><br>Hon. Alice D. Bonner |

## RECEIVER'S INITIAL REPORT

Marshall Glade, not individually, but as Court-appointed Receiver ("**Glade**" or "**Receiver**") to oversee the legacy Unity Health Care Sharing Ministry ("**HCSM**") plans and to oversee all Unity HCSM plan assets during the pendency of the litigation between the parties pursuant to O.C.G.A § 9-8-1 and the April 25, 2019 Order entered by this Court appointing Glade as Receiver (the "**Order**"), files this initial report.  The purpose of the initial report is to provide the Court and all interested parties with a description of the nature of the Receiver's activities, investigations, analysis, observations, and recommendations to date.

## Table of Contents

**1.0    Introduction** ......................................................................................................... **3**

**2.0    Executive Summary** .............................................................................................. **4**

**3.0    Background** ........................................................................................................... **8**

**4.0    Receiver's Activities** ......................................................................................... **10**

  *4.1    Member Payments*............................................................................................ 10

  *4.2    Management Fees* ............................................................................................ 11

  *4.3    Healthcare Expenses* ....................................................................................... 11

  *4.4    Scenario Analysis of Financial Results* ........................................................... 12

  *4.5    Development of Plan Termination* .................................................................... 12

**5.0    Receiver's Preliminary Observations & Analysis** ....................................... **12**

  *5.1    Commingled Funds*........................................................................................... 12

  *5.2    Unreliable and Incomplete Unity Financial Statements* ................................... 13

    *5.2.1 Member Payments / Application Fees*............................................................ 13

    *5.2.2 Management Fees* .......................................................................................... 14

  *5.3    Scenario Analysis of Financial Results* ........................................................... 15

    *5.3.1 Allocation of Member Payments for Bundled Products*.................................. 17

    *5.3.2 Management Fees* .......................................................................................... 17

    *5.3.3 TPA Expense – HealthScope*......................................................................... 18

**6.0    Next Steps**.......................................................................................................... **18**

  *6.1    Determination of Funds in Aliera's Possession Corresponding to Unity HCSM*.............. 18

  *6.2    Preparation of GAAP Financial Statements* .................................................... 18

  *6.3    Plan Termination and Segregation of Funds* ................................................... 19

## 1.0   Introduction

1.   On April 25, 2019 the Superior Court of Fulton County Business Case Division (the "**Court**") appointed Glade as the Receiver to oversee Unity HCSM plans and plan assets.

2.   To assist in his work, the Receiver retained the services of GlassRatner professionals. The Receiver, along with other GlassRatner professionals, met on numerous occasions with individuals familiar with Unity's financial processes and other affairs and reviewed various relevant documents.

3.   The Receiver's duties and responsibilities as set forth in the Court's April 25, 2019 Order are as follows[1];:

   a)   *"Oversee the legacy Unity HCSM plans and to oversee all Unity HCSM plan assets during the pendency of this litigation."*

   b)   *"Receiver shall have complete access to books and records of Aliera and Unity that the receiver determines, subject to the direction of the Court, are necessary to fulfill the duties set forth in this Order."*

   c)   *"Examine Aliera's and Unity's books and records as necessary to determine the total amount of funds in Aliera's possession, custody, or control corresponding to Unity HCSM component of member plans."*

   d)   *"Receiver shall have all financial access and audit rights necessary to confirm the proper allocation, as well as payment of claims and expenses".*

   e)   *"Receiver will have access to and oversight of the use of Unity HCSM member funds to pay for the claims administration services provided by Aliera, Healthscope, and any other entities providing approved administration or other necessary services for the Unity HCSM plans."*

   f)   *"Receiver also has review and audit rights with respect to Aliera's administration of Unity HCSM Claims to ensure Aliera is administering the members' plans and paying member claims consistently with the plan documents."*

4.   The analyses performed, and to be performed, by the Receiver will require the scrutiny of financial information.  GlassRatner is not a public accounting firm. While our work may involve

---

[1] Page 29 – 30 of Order Entering Interlocutory Injunction and Appointing Receiver (**Appendix 1**)

analysis of accounting records, it does not include an *audit* or *review* of existing records in accordance with generally accepted auditing standards or standards for review engagements[2].

## 2.0   Executive Summary

5.    In 2016, Aliera approached Anabaptist Healthshare ("**AHS**") about developing a business relationship. Aliera sold a direct primary care medical home product ("**DPCMH**") which focuses on preventative and primary care. AHS sold an HCSM product, which is an alternative to traditional insurance products where members of similar religious/faith beliefs share in the health care costs of its members.  Aliera proposed combining its DPCMH product with the HCSM product for the benefit of a comprehensive offering to the public, as illustrated in **Chart 1** below. The HCSM product was to be offered by Unity Healthshare, LLC, a wholly-owned subsidiary of AHS.

**Chart 1**



6.    In February 2017, AHS and Aliera signed an agreement authorizing Aliera to sell the combined DPCMH and HCSM product and administer the plans.

7.    As part of the Receiver's Order, we have examined Unity's books and records maintained by Aliera in order to assess the operating financial results from January 1, 2017 through June 30,

---

[2]  An *Audit* is an independent examination of accounting and financial records and financial statements to determine if they conform to the law and to generally accepted accounting principles (GAAP).  A *Review* is a service under which the accountant obtains limited assurance that there are no material modifications that need to be made to an entity's financial statements for them to be in conformity with the applicable financial reporting framework, such as GAAP.

2019.   GlassRatner focused its efforts on examining and analyzing member payments, management fees, healthcare sharing expenses, financial results and development of a plan termination.

8.   The documents relied upon for our analysis included bank statements, QuickBooks files, the member database, a healthcare sharing expense register, management fee calculations, contribution fee allocations and other supporting documentation.

9.   Per the Court's Order, the "*Receiver shall examine Aliera's and Unity's books and records as necessary to determine the total amount of funds in Aliera's possession, custody, or control corresponding to the Unity HCSM component of member plans*"[3]. Aliera controlled and managed all cash receipts and disbursements. Depending on the operating results of the HCSM component, Aliera would either owe funds to Unity or Unity would owe funds to Aliera. For example, if the operating results of the HCSM component resulted in Net Assets (i.e. Unity contributions less Unity disbursements) of $10 million, Aliera would owe $10 million to Unity. By contrast, if the operating results of the HCSM component resulted in a Net Deficit (i.e., Unity disbursements exceed Unity contributions) of $10 million, Unity would owe $10 million to Aliera. Based on our procedures and analyses to assess the financial performance of the Unity component, we made the following observations:

a) **Aliera Commingled Funds** – Aliera used a single bank account in which they commingled funds related to its business venture with Unity and their non-Unity related interests with other partners. All Unity and non-Unity member payments were deposited into a single bank account exclusively controlled by Aliera.

b) **Unreliable and Incomplete Unity Financial Statements** – Our review of the internal unaudited financial statements and supporting documentation showed errors associated with Aliera's accounting for member payments, fee applications and management fees. Accordingly, we were unable to rely on the financial statements produced by Aliera.

c) **Scenario Analysis of Financial Results** – Due to the lack of reliable financial statements, GlassRatner developed schedules to calculate the actual financial performance. The underlying data provided by Aliera allowed GlassRatner to analyze the performance of the Unity HCSM plans.  We noted the Agreement did not expressly allocate the percentage of member payments associated with the Aliera DPCMH

---

[3] Order Entering Interlocutory Injunction and Appointing Receiver, page 29.

component and the percentage of member contributions associated with the Unity HCSM component. The proper allocation is a dispute between the parties that is before the Court in this litigation. The Agreement also did not expressly state that Unity would be responsible for expenses associated with the third-party administrator, whether such expenses are to be allocated, and if so, the allocation of such expenses. The disputed issues have a material impact on the financial results of Unity.

10. Accordingly, GlassRatner calculated the financial performance under two scenarios to allocate member payments, management fees and the third-party administrator fees (see Table 1 below). **Scenario A** summarizes the financial results based on the allocation of member payments and third-party administrator expenses currently asserted by Aliera. **Scenario B** summarizes the financial results based on the allocation of member payments and third-party administrator expenses currently asserted by Unity. The allocation assumptions are as follows:

  i.    **Scenario A** assumes **35%** of the monthly payments for the bundled products are allocated to Unity and the entire third-party administrator fee is a Unity expense;

  ii.   **Scenario B** assumes **68%** of the monthly payments for the bundled products are allocated to Unity and the third-party administrator fee is <u>not</u> a Unity expense;

  iii.  Both Scenario's include an adjustment of the allocations related to Unity-only products and the application fees; and

  iv.   The two parties dispute how the management fee described in Section 4 of the Agreement should be calculated. Both scenarios calculate the management fee in the same way. A change in the allocations affects the management fee calculations. For example, an increase in Unity allocations results in an increase in the management fee payable from Unity to Aliera.

**Table 1**

| Unity Scenario Analysis on Financial Results (January 1, 2017 to June 30, 2019) | | | |
|---|---|---|---|
| Description | Scenario A | Scenario B | Difference |
| Total Member Contributions and Application Fees | $ 113,806,092 | $ 203,913,734 | $   (90,107,642) |
| Aliera Portion of Claims Expense [1] | 34,548,794 | 34,548,794 | - |
| **Total Contributions** | **$ 148,354,885** | **$ 238,462,528** | **$   (90,107,642)** |
| Less: Claim Disbursements | 142,306,443 | 131,505,056 | 10,801,386 |
| **Contributions in Excess of Claims** | **$     6,048,443** | **$ 106,957,471** | **$ (100,909,029)** |
| Less: Aliera Management Fee Per Contract Terms | 13,166,442 | 27,747,332 | (14,580,891) |
| **Unity-Component Performance** | **$     (7,117,999)** | **$   79,210,139** | **$   (86,328,138)** |

*Notes*

[1]   100% of claims expense for the bundled product are recorded on the Unity general ledger.  According to
      Aliera, approximately 68% of the 2018 medical claims (in dollars) relates to the HCSM portion of the offering.
      As an offset to this additional expense recorded on the Unity general ledger, an equal amount has been
      allocated to Unity as additional revenue.

11.   As illustrated above in Table 1, there is an $86 million variance between the operating results using **Scenario A** compared to **Scenario B**. In summary, for every 5% change in allocation from Aliera to Unity there is approximately an $11.4 million improvement to Unity's financial performance.

12.   Receiver also is in the process of reviewing records regarding Aliera's administration of the payment of Unity members' requests to share medical expenses. The Receiver will review these records and processes to confirm that Aliera is administering the Unity HCSM plans in accordance with the plan documents.

***Next Steps***

13.   The Receiver plans to analyze the operating results post-June 2019 and will incorporate those results into an updated version of the scenario analyses.

14.   The Receiver will continue to work with Aliera and Unity to develop a specific recommendation on the amount of funds to segregate, if necessary.

15.   After a resolution has been reached regarding the scenario analysis variances, GlassRatner and Aliera will require at least 30 to 45 days to prepare financial statements in accordance with GAAP.

16.  The plan is currently operating at a loss and has been operating at a loss for the past few months as the number of existing members has significantly declined, new members could not be added, and the average cost of the sharing request has increased. Unity and Aliera, with approval from the Court, agreed to terminate the plan as of November 18, 2019. The members have until February 15, 2020 to submit any healthcare expenses.

17.  In the interim, Aliera has agreed to fund an escrow account for the expected value of the healthsharing expenses to be processed through the final healthcare expense submission date (February 15, 2020).  Aliera estimates that from October 15, 2019 through the final payment, ▇▇▇▇ of medical expenses will be processed. The ▇▇▇▇ of medical expenses will be deposited from an anticipated ▇▇▇▇ in member contributions and ▇ ▇▇▇▇ from Aliera into a separate bank account to which the Receiver will have access and oversight.

## 3.0  Background

18.  In 2016, Aliera approached Anabaptist Healthshare ("AHS"), who is the sole owner of Unity, about developing a business relationship.  Aliera sold a direct primary care medical home product ("DPCMH") which focuses on preventative and primary care. Anabaptist sold an HCSM product which is an alternative to traditional insurance products where members of similar religious/faith beliefs share in the health care costs of its members.  Aliera proposed combining this DPCMH product with the HCSM for the benefit of a comprehensive offering to the public. In addition, Aliera would "*develop networks, distribution channels, provide plan management and benefit coordination for health care services...throughout the United States*".[4] In November 2016, Anabaptist created Unity Healthshare, LLC to partner with Aliera to offer the combined side-by-side product.

19.  In February 2017, the two parties executed an Agreement between Anabaptist Healthshare, Unity Healthshare LLC and Aliera Healthcare, Inc. (the "Agreement"), which is attached to this Report in **Appendix 2**[5]. The Agreement established the following:

a)  AHS and Aliera will partner together and enable Aliera to market and sell the two non-insurance products (i.e. the DPCMH and HCSM products) to the public[6];

---

[4] Page 1 of Agreement between Anabaptist Healthshare and Aliera Healthcare, Inc. dated February 2017. [GR_000358].
[5] Agreement between Anabaptist Healthshare and Aliera Healthcare, Inc. dated February 2017. [GR_000358 – 365].
[6] "*Public markets means persons who will acknowledge the standard of beliefs and other requirements as deemed necessary by AHS*", page 2 of the Agreement. [GR_000359].

8

b) AHS and Unity will market products through Aliera using their DPCMH model of care, network, administration, call center, marketing, enrollment portal and other related services;

c) AHS is granting Aliera an exclusive license to sell and distribute the Unity products to the public markets;

d) During the term of the Agreement, Aliera will remain the sole and exclusive healthcare company allowed to market and sell health care products;

e) Aliera is *"entitled to retain the first monthly membership fee. The second monthly membership fee payment shall also be retained by Aliera to be used if necessary for Aliera or Unity expenses .Thereafter, any succeeding month(s) which the membership is continued, Aliera shall be entitled to retain $25.00 per member per month ("PMPM") as payment for its services"*;[7]

f) Unity will establish a ministry fund to further their charitable direction, which will receive the following:

   i.    $2.00 PMPM; and

   ii.   $25.00 for each one-time application fee per membership.

g) Eldon Hochstetler and Tyler Hochstetler, who are Anabaptist Healthshare, Inc. officers, will each receive $2.50 per enrolled member in Unity Healthshare per month. This fee ($5.00 PMPM in total) shall be incurred by and paid by Aliera each month; and

h) Aliera will design and implement all cost sharing plans, marketing materials, operational controls and general business banking for Unity and it's Healthshare operations.

The contract terms are further discussed in the Court's April 25, 2019 Order.

20.   The Unity and Aliera products were marketed together to the general public and required only one contribution to be paid by the member. Aliera collected the payment from each member and then allocated a portion of the payment between Aliera and Unity. **However, the Agreement does not specify any agreed upon allocation of the monthly member payments. The proper allocation was a disputed issue between the parties during their relationship and it remains a disputed issue before the Court in the litigation.** Aliera and Unity have materially different perspectives on what the allocation of member contributions should be. As a result, this is by far the largest issue affecting the financial results.

---

[7] Section 4 of Agreement between Anabaptist Healthshare and Aliera Healthcare [GR_000359-GR_000360]

21.  Aliera has recently informed the Receiver that certain members made two separate payments – one for the Aliera DCPMH product and one for the Unity HCSM product. Aliera has represented this occurred from November 2016 through July 2017. Further analysis will need to be performed to assess the impact, if any conclusions.

22.  In August 2018, after failed mediation with Aliera, AHS/Unity terminated the Agreement. However, Aliera has continued to administer the plans subject to a temporary restraining order, which was issued in December 2018. After extensive on-going litigation between the parties throughout early 2019, the Receiver was appointed on April 25, 2019.

## 4.0   Receiver's Activities

23.  Since the Appointment of the Receiver, Glade and his professionals made information requests to Aliera's counsel to facilitate the efforts described herein.  The Receiver and his team continually met with Aliera and Unity representatives to carry out the Receiver's duties and responsibilities.  GlassRatner relied upon these meetings and the review of documents (see **Appendix 3** for further details) in order to develop this initial report.

24.  The Aliera team present in a majority of meetings and conference calls were:

    a)  James F. Butler III, Vice President of Finance;

    b)  Ella Bikeeva, Controller; and

    c)  Aliera Counsel (Bondurant Mixson & Elmore LLP).

25.  A series of meetings also took place with Unity counsel represented by Alston & Bird LLP.

26.  In order to meet the Receiver's responsibilities as outlined above, GlassRatner performed the following procedures:

### 4.1   Member Payments

    a)  Examined the Aliera maintained Wells Fargo depository bank account statements from inception through June 2019[8].

    b)  Analyzed the Unity QuickBooks file maintained by Aliera from inception through June 2019;

---

[8] GR_001815 – GR_001822, GR_000867 – GR_001283,GR_001301 – GR_001409

c) Performed a reconciliation of the bank statements (noted above) to the member database file;

d) Performed a reconciliation of the member database file to the supporting accounting records;

e) Obtained an understanding of how payments are processed and accounted for; and

f) Analyzed the allocation percentages applied to Aliera and Unity regarding the shared products along with the necessary supporting documentation.

### 4.2   *Management Fees*

a) Reviewed the Agreement between Aliera and Unity (defined below) to understand the financial terms of the management fee;

b) Obtained an understanding and analyzed the management fees as calculated by Aliera; and

c) Re-calculated the management fee per the language of the Agreement as follows: *"Aliera shall be entitled to retain the initial enrollment fee and the first monthly membership fee payment. The second monthly membership fee payment shall also be retained by Aliera, to be used if necessary for Aliera or UHS ("Unity") expense. Thereafter, any succeeding month(s) which the membership is continued, Aliera shall be entitled to retain $25 PMPM as payment for its services."[9]*

d) As noted previously, the parties dispute how the management fee described in Section 4 of the Agreement should be calculated.

### 4.3   *Healthcare Expenses*

a) Reconciled the healthcare expenses to the accounting records;

b) Gained an understanding of the allocation of healthcare expenses between the DPCMH and HCSM products (defined below);

c) Reviewed the third-party claims administrator agreement and reconciled the financial terms outlining the fee structure; and

d) Refer to **Appendix 4** for further discussion on our procedures performed.

---

[9] Section 4 of Agreement between Anabaptist Healthshare and Aliera Healthcare [GR_000359-GR_000360]

### *4.4*   *Scenario Analysis of Financial Results*

    a) Gained an understanding of the disputed business terms and their respective financial impact; and

    b) Compiled a preliminary scenario analysis of financial results.

### *4.5*   *Development of Plan Termination*

    a) Facilitated an agreement of terms between Aliera and Unity regarding the termination of membership plans; and

    b) Established procedures to verify adequate funds are available and segregated in order to fund the qualifying healthcare expenses run-out.

### 5.0   Receiver's Preliminary Observations & Analysis

27. Per the Receiver's Order, the "*Receiver shall examine Aliera's and Unity's books and records as necessary to determine the total amount of funds in Aliera's possession, custody, or control corresponding to the Unity HCSM component of member plans*"[10]. Aliera controlled and managed all cash receipts and disbursements. Depending on the operating results of the HCSM component, Aliera would either owe funds to Unity or Unity would owe funds to Aliera. For example, if the operating results of the HCSM component resulted in net assets (i.e. contributions less disbursements) of $10 million, Aliera would owe $10 million to Unity. By contrast, if the operating results of the HCSM component resulted in a Net Deficit (i.e., Unity disbursements exceed Unity contributions) of $10 million, Unity would owe $10 million to Aliera. While performing our procedures to determine the Unity operating results we noted the following observations:

### *5.1*   *Commingled Funds*

28. Aliera maintained a single bank account in which they commingled funds related to their business venture with Unity as well as their non-Unity related interests with other partners. All Unity and non-Unity member payment were deposited into a Wells Fargo bank account (ending ██████) exclusively controlled by Aliera.

---

[10] Order Entering Interlocutory Injunction and Appointing Receiver, page 29.

29.   These member contributions are tracked within Admin123, a customer database software administered by Aliera. The database tracks customer information such as address, date of birth, date of enrollment, payment timing, payment method, etc.

30.   The member payments recorded to the Admin123 Files fit into one of six categories – Bundled Products, Unity Non-Bundled Products, Unity Dental and Vision Products, Aliera Product Ryders, Application Fees and Products not associated with the Unity - Aliera platform. Refer to **Appendix 5** for further description of these products.

31.   GlassRatner reconciled the ███████████ in bank statement deposits for the period January 1, 2017 through June 30, 2019 to the Admin123 files. Refer to **Appendix 6** for our Reconciliation Schedule.

32.   From review of the Admin123 files, GlassRatner determined ███████████ was received for the Unity – Aliera platform. Refer to **Appendix 7** for our Schedule of Contributions by Product.

33.   Additional procedures were required by GlassRatner in order to account for and manage the commingling of not-for-profit (Unity), for-profit (Aliera), and non-Unity payments. Refer to **Appendix 8** for a summary of additional procedures performed to understand and validate the data in the Admin123 files.

### 5.2   *Unreliable and Incomplete Unity Financial Statements[11]*

34.   The Unity financial statements, as prepared by Aliera, are unreliable and inaccurate. They contained the following errors for which we made adjustments with the input and assistance of Aliera's financial team.

### 5.2.1 *Member Payments / Application Fees*

35.   ███████████ of Unity-only products were sold, of which Aliera only recorded ███████████ as Unity contributions. GlassRatner identified that an additional ███████████ in contributions should be recognized as Unity member contributions.

---

[11] James Butler, VP of Finance, and Ella Bikeeva, Controller, were not hired until mid-2018 in the midst of significant growth (as evidenced by the $85.7 million revenue increase from 2017 to 2018). Shortly thereafter, litigation commenced between Unity and Aliera, which placed additional strain on Aliera's resources. Given this situation, it is not uncommon for a company to be faced with these types of issues associated with financial reporting. The Aliera accounting and finance team have been cooperative in assisting us in the execution of our procedures.

36.    ███████ of Aliera Product Riders were sold, of which Aliera recorded ███████ as Unity contributions. None of the ███████ should have been recognized as Unity contributions, but instead should be recognized as Aliera-only revenue.

37.    Based on Aliera's methodology (which is contested by Unity), member payments for bundled products would be allocated **35%** to Unity and **65%** to Aliera. GlassRatner's review of the bundled product determined only **32.5%** was allocated to Unity. Adjusting this percentage to **35%** results in an additional ███████ in Unity-related member contributions.

38.    Per the Agreement, Unity should have been allocated $25 revenue for each application fee, with the balance retained by Aliera[12]. GlassRatner recalculated the allocation of application fees and determined the Unity application fee revenue was overstated by approximately ███ ██████, such that Aliera should have received ███████ more in revenue.

### 5.2.2 *Management Fees*

39.    The management fee paid to Aliera is calculated on a per member basis, as follows[13]:

   a)   1st monthly membership payment;

   b)   2nd monthly membership payment with the caveat that it is *"to be used if necessary for Aliera or Unity expenses"*; and

   c)   3rd monthly payment and thereafter at $25 per month.

40.    GlassRatner calculated the management fees based on the language outlined in the Agreement described above. Our management fee calculation was materially different than Aliera's calculation primarily due to Aliera's methodology which included a $25 fee on the 1st and 2nd payments for select products[14], instead of the full monthly contribution.

41.    The net effect of the methodology difference between Aliera's management fee calculation and GlassRatner's calculation is significant, which if applicable, would result in **$13.2 million** more in fees owed to Aliera as shown in **Table 2** below. This is a disputed issue between the parties.

---

[12] Per Paragraph 7(d) of the Agreement between Anabaptist Healthshare and Aliera Healthcare [GR_000358 – 365].
[13] Refer to Section 3.2 of the Agreement [GR_000360 – 361].
[14] Product ID's: 17460, 17461, 17462, 17113, 17115, 17117, 20662, 20725, 20726, 17476, 17478, 17480, 16916, 17108, 17109, 17184, 17185, and 17186.

14

**Table 2**

| Management Fee Calculation | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 2017 | | 2018 | | Jan. - Jun. 2019 | | Total | | |
| Aliera[1] | Contract | Aliera[1] | Contract | Aliera[1] | Contract | Aliera | Contract | Variance |
| ■ | ■ | ■ | ■ | ■ | ■ | ■ | ■ | $ 13,166,442 |
| *Notes* | | | | | | | | |
| [1] The management fee shown above does not reconcile to Aliera's books and records as their calculations evolved as a result of on-going discussions. | | | | | | | | |

### 5.3   *Scenario Analysis of Financial Results*

42.  Due to the lack of reliable financial statements, GlassRatner developed schedules to calculate the actual financial performance. The underlying data provided by Aliera allowed GlassRatner to analyze the performance of the Unity HCSM plans.  We noted the Agreement did not expressly allocate the percentage of member payments associated with the Aliera DPCMH component and the percentage of member contributions associated with the Unity HCSM component.  The proper allocation is a dispute between the parties that is before the Court in this litigation. The Agreement also did not expressly state that Unity would be responsible for expenses associated with the third-party administrator, whether such expenses are to be allocated, and if so, the allocation of such expenses. The disputed issues have a material impact on the financial results of Unity.

43.  Accordingly, GlassRatner calculated the financial performance under two scenarios to allocate member payments, management fees and the third-party administrator fees. **Scenario A** summarizes the financial results based on the allocation of member payment and third-party administrator expenses currently asserted by Aliera. **Scenario B** summarizes the financial results based on the allocation of member payments and third-party administrator expenses currently asserted by Unity.

44.  The Scenario analyses use the following assumptions:

   a)  Member Payment Allocations:

   i.  **Scenario A** assumes **35%** of the monthly payments for bundled products  are allocated to Unity based on Aliera's research and conclusions they believe are supported by the Brady Ware market study report that is discussed below in paragraph 46; and

   ii.  **Scenario B** assumes **68%** of the monthly payments for bundled products  are allocated to Unity based on the split of healthcare expenses between the DPCMH and HCSM components.  Further discussion regarding this can be found in paragraph 47 below.

15

b) Third-Party Administrator Fee (HealthScope):

    i.   **Scenario A** assumes the administrator fee is exclusively a Unity expense; and

    ii.   **Scenario B** assumes the tasks performed by the third-party administrator are part of the scope of services provided by Aliera in earning their management fee, so as a result, the administrator fee should not be a Unity expense and be solely incurred by Aliera.

45.   The variance between the two scenarios is **$86.3 million** as illustrated previously in **Table 1**. **Table 3** below provides additional details relating to the impact of Aliera and Unity's respective allocation positions.

**Table 3**

| Unity Scenario Financial Results (January 1, 2017 to June 30, 2019) | | | |
|---|---|---|---|
| | Scenario A | Scenario B | Difference |
| Description | $ | $ | $ |
| **Cash Receipts** | | | |
| Bundled Products | | | $ (90,107,642) |
| Unity Only Products | | | - |
| Unity Portion of Member Share Contributions[1] | | | $ (90,107,642) |
| Unity Portion of Application Fees[2] | | | - |
| Aliera Portion of Claims Expense[3] | | | - |
| **Total Cash Receipts** | | | $ (90,107,642) |
| | | | |
| **Cash Disbursements** | | | |
| Claims Expense[3] | | | $ - |
| Claims TPA Expense[4] | | | 11,356,988 |
| Management Fees Per Aliera Calculation[5] | | | (555,601) |
| Other Misc. Expenses[6] | | | - |
| Accrued Claims Estimate[7] | | | - |
| **Total Cash Disbursements** | | | 10,801,386 |
| | | | |
| **Net Receipts and Disbursements** | | | $ (100,909,029) |
| Less: | | | |
| Additional Management Fee Per Contract Terms[5] | | | (14,580,891) |
| **Net Receipts and Disbursements After Management Fee Per Contrac** | $ ▮▮▮ | $ ▮▮▮ | $ (86,328,138) |

*Notes*
[1] For bundled products, Scenario A was calculated as 35% of the monthly contribution (65% allocated to Aliera). Scenario B was calculated as 68% of the monthly contribution (32% allocated to Aliera). Any stand alone Unity product was calculated as 100% Unity. Note - parties dispute the appropriate monthly contribution splits.
[2] Per Agreement Between Anabaptist Healthshare and Aliera Healthcare ("Agreement") (Bates GR_000362) $25 per application fee is allocated to Unity, remainder is retained by Aliera.
[3] All expenses related to claims for the bundled product are presented on the Unity financial statements. This includes the 32% of claims that relate to the Aliera portion of the bundled product. As an offset to this additional expense on the Unity financials, an equal amount has been allocated to the revenue side.
[4] Expense related to third-party claims administrator, HealthScope. Scenario A represents 100% of the HealthScope expense with no allocation to Aliera. Scenario B represents 0% of the HealthScope expense allocated to Unity with 100% allocated to Aliera. The parties dispute how the expenses associated with Healthscope should be allocated between the parties.
[5] Aliera calculated their management fee differently than the fees agreed upon in the Agreement. If Aliera calculated the management fee based on GlassRatner's understanding of the terms of the agreement, an additional ▮▮▮▮▮▮ in fees would be owed to Aliera.
[6] Other miscellaneous expenses such as rent, legal and accounting fees, and wages allocated specifically to Unity.
[7] This represents an estimate of incurred but unpaid outstanding claims owed as of 6/30/19.

### 5.3.1 *Allocation of Member Payments for Bundled Products*

46. Aliera proposes an allocation for the bundled products payments of 35% to Unity and 65% to Aliera (**Scenario A**).  For example, if a member pays $400, then $140 would be allocated as a member contribution to the Unity plan and the remaining $260 would be retained by Aliera[15]. The rationale for this split of member share contributions is based on an HCSM industry analysis performed by Brady Ware & Schoenfeld, Inc. (which was commissioned by Aliera)[16]. The Brady Ware Report summarized purported market data related to comparable products. Aliera relied on the Brady Ware Report estimates to support their allocation position of 35%.

47. **Scenario B** is an allocation of the bundled product payments of **68%** to Unity and **32%** to Aliera. For example, if a member pays $400, then $272 would be a member contribution to the Unity plan and the remaining $128 would be retained by Aliera[17].  The rationale for this split of the member share payments is based on the healthcare expenses, where the allocation of the contributions would match the actual medical expenses of the Aliera and Unity products. According to Aliera, approximately **68%** of the 2018 medical expenses (in dollars) relates to the HCSM portion of the offering; therefore, Unity believes it should receive **68%** of member contributions for bundled products to pay these expenses. Depending on which allocation is utilized, the Unity membership contribution could be either **$112 million (Scenario A)** or **$202 million (Scenario B)**, a difference of **$90 million.**

### 5.3.2 *Management Fees*

48. Ultimately, the member payment allocations have a significant effect on the management fee. For example, assuming a monthly payment of $400 and  an allocation to Unity of **35%**, then Aliera would be eligible to retain $140 per month for the first two months.  If that same $400 payment is allocated **68%** to Unity, Aliera would be eligible for a management fee of $272 per month for the first two months.  As previously shown in **Table 3**, based on these adjustments the variances in the management fee calculation is as much as **$14.6 million.**  As noted above, the allocation issue and the amount of the management fee are disputed issues between the parties.

---

[15] $400 x .35 = $140. $400 - $140 = $260
[16] Brady Ware Analysis of Healthcare Plan Pricing dated March 8, 2019, with an effective date of October 31, 2018 (the "**Brady Ware Report**") [GR_000322 – 000342].
[17] $400 x .68 = $272. $400 - $272 = $128.

### 5.3.3 *TPA Expense – HealthScope*

49.   Another disputed item relates to the claims TPA expense. These are fees paid to HealthScope for administering the healthcare expenses. Aliera proposes the full expense should be allocated to the Unity books, consistent with how Aliera recorded the expense on the general ledger. Unity contends that the tasks performed by HealthScope are included in the responsibilities of the manager (Aliera) as defined in the Agreement. Therefore, this expense should be borne exclusively by Aliera. This dispute results in a **$11.3 million** variance between the two parties.

## 6.0   Next Steps

### 6.1   *Determination of Funds in Aliera's Possession Corresponding to Unity HCSM*

50.   The net receipts and disbursements represent the net assets of the Unity HCSM plan; however, this does not equate to the amount of dollars held by Aliera corresponding to the Unity HCSM plan (amounts owed from Aliera to Unity). When calculating the final amounts owed from Aliera to Unity, we need to take into account the **$4.6 million** of cash frozen and controlled by Unity in August 2018. These dollars will need to be offset from any net assets calculation to determine the true dollars owed from Aliera to Unity.

51.   Based on the size of the **$86 million** variance between the operating results under **Scenario A** and **Scenario B**, the Receiver is unable to make a specific recommendation on the amount of funds to segregate at this time. For every 5% change in allocation from Aliera to Unity there is approximately an **$11.4 million** increase to Unity's net cash receipts.

52.   The Receiver plans to analyze the operating results post-June 2019 and will incorporate those results into an updated version of the scenario analyses.

53.   Additionally, the Receiver will continue to work with Aliera and Unity to develop a specific recommendation on the amount of funds to segregate, if necessary.

### 6.2   *Preparation of GAAP Financial Statements*

54.   After a resolution has been reached regarding the scenario analysis variances, GlassRatner and Aliera will require at least 30 to 45 days to prepare financial statements in accordance with GAAP. Once the GAAP financial statements are finalized, a financial statement audit can

commence. When the audit is complete, Unity will be able to submit the appropriate documents in connection with its status as a non-profit entity.

55. The Receiver has and will continue to speak with the parties to attempt to negotiate a compromise and settlement of the terms of the Agreement that are in dispute.

## 6.3  *Plan Termination and Segregation of Funds*

56. The plan is currently operating at a loss and has been operating at a loss for the past few months as the number of existing members has significantly declined, new members could not be added, and the average cost of the sharing request has increased. There is no ability to sign up new members so the plan will continue to operate at a loss. Therefore, Unity and Aliera, with approval from the Court, agreed to terminate the plan as of November 18, 2019. The members will have until February 15, 2020 to submit any healthcare expenses.

57. In the interim, Aliera has agreed to fund an escrow account for the expected value of the medical expenses to be processed through the final submission date (February 15, 2020). Aliera projected from October 15, 2019 through the final payment, ████████ of medical expenses to be processed. The ████████ of medical expenses will be funded through ██ ██████ in anticipated member contributions and ███████████████████ into an account which the Receiver will have access and oversight.  In addition, the Receiver will be provided the weekly HealthScope funding requests. The combination of account access and the HealthScope funding requests will allow the Receiver to ensure all eligible remaining claims will be paid and determine if the escrow is appropriately funded.

Respectfully Submitted,

Marshall Glade, Receiver

By:

Marshall Glade
GlassRatner Advisory & Capital Group LLC
3445 Peachtree Road
Suite 1225
Atlanta, GA 30326

November 22nd, 2019