# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| NOELLE LeCANN, KRISTIN SELIMO, and TANIA FUNDUK, on behalf of themselves and others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) CIVIL ACTION NO.<br>) 1:20-CV-02429-AT |
| vs. | ) |
| THE ALIERA COMPANIES INC., formerly known as ALIERA HEALTHCARE, INC., | )<br>)<br>) |
| Defendant. | ) |

## DEFENDANT'S OPPOSITION TO
## PLAINTIFFS' MOTION FOR LEAVE TO FILE SURREPLY

Robert H. Rutherford
Elizabeth B. Shirley
BURR & FORMAN LLP
420 North 20th Street
The Shipt Tower, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
rrutherford@burr.com
bshirley@burr.com

Sarah R. Craig
BURR & FORMAN LLP
One Tampa City Center
Suite 3200
201 North Franklin Street
Tampa, Florida 33602
Telephone: (813) 221-2626
Facsimile: (813) 221-7335
scraig@burr.com

*Attorneys for Defendant The Aliera Companies Inc.*

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................1

II. LEGAL STANDARD...................................................................2

III. ARGUMENT...............................................................................2

    A. The New Decision in the *Jackson* Case Does Not Justify a 17-Page Surreply Brief...................................................2

    B. Aliera's Declarations Do Not Justify the Filing of a Surreply Brief .................................................................3

    C. Plaintiffs' New Arguments to Avoid the Delegation Clause Rely on Distinguishable Cases They Could Have Cited Previously.............4

        1. Transportation Worker Exemption............................................5

        2. Prospective Waivers and Illusory Arbitration Process...............7

    D. Plaintiffs Should Not File a Surreply to Elaborate on Prior Authority and Argument ................................................10

    E. Whether *Jackson* Properly Construed Ninth Circuit Law Is Not in Issue Here ...................................................12

IV. CONCLUSION ..........................................................................15

CERTIFICATE OF COMPLIANCE.....................................................16

CERTIFICATE OF SERVICE...............................................................16

i

# I. INTRODUCTION

Plaintiffs filed their Class Action Complaint on June 5, 2020, raising eight counts against Aliera. (Doc. 1). In response, on July 16, 2020, Aliera moved to dismiss the claims or to compel arbitration. (Docs. 12-13.) Plaintiffs opposed this relief, (Doc. 26), and Aliera filed a reply in support on September 4, 2020. (Doc. 28). Now, *after* the close of all briefing contemplated by the Local Rules of the Northern District of Georgia, Plaintiffs seek to supplement the record with a sur-reply and a First Amended Complaint, both of which attempt to bolster their position that their claims should not be arbitrated. (Docs. 29 & 30.) While they claim that Aliera's reliance upon the recent decision in *Jackson v. Aliera Cos. Inc.,* No. 19-cv-01281-BJR, 2020 WL 4787990 (W.D. Wash. Aug. 18, 2020), which sent an identical dispute to arbitration, supports the need for such surreply, review of Plaintiffs' proposed brief reveals their arguments all turn on authority that was readily available to them when they first opposed arbitration. And, in some instances, Plaintiffs seek to elaborate further on cases and arguments they previously cited in their response brief. They should not be granted leave to file another brief under these circumstances.

## II. LEGAL STANDARD

"No authorization exists in the Federal Rules of Civil Procedure or the local rules for the Northern District of Georgia for parties to file surreplies. To allow such surreplies as a regular practice would put the court in the position of refereeing an endless volley of briefs." *Garrison v. Ne. Ga. Med. Ctr., Inc.*, 66 F. Supp. 2d 1336, 1340 (N.D. Ga. 1999), *aff'd*, 211 F.3d 130 (11th Cir. 2000). "Although the Court may in its discretion permit the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005).

## III. ARGUMENT

### A. The New Decision in the *Jackson* Case Does Not Justify a 17-Page Surreply Brief.

Plaintiffs suggest that they should be able to file a surreply brief because Aliera cited to a new decision rendered by a court in the Western District of Washington enforcing the same Trinity member guides and arbitration agreements at issue here. *See Jackson v. Aliera Cos., Inc.*, 2020 WL 4787990 (W.D. Wash. Aug. 18, 2020). Ths decision was issued four days after Plaintiffs filed their response in this case. (Doc. 26.) The *Jackson* decision injected no new legal issue; it relied on

the same delegation principles Aliera cited in its initial brief in this case, (*see* Doc. 13 at 25-27), which Plaintiffs had ample opportunity to respond to in their 37-page response. The *Jackson* decision, while supportive of the result Aliera seeks, does not justify a surreply brief, and certainly not the 17-page behemoth Plaintiffs seek to file here.[1]

B.  **Aliera's Declarations Do Not Justify the Filing of a Surreply Brief.**

Plaintiffs point out that Aliera filed declarations from three persons in connection with its reply brief. But they fail to mention that all of those declarations were filed in response to new arguments that Plaintiffs primarily focused on in their response brief. Aliera's position is that the ultimate merits issue in this case (whether Unity and Trinity's programs were valid HCSMs or were instead insurance) is off-limits at this stage of the proceedings because resolution of the merits of the parties' dispute is a job belonging to the arbitrator. (*See* Doc. 13 at 26-27.) Plaintiffs ignored those settled principles and instead devoted 18 pages in their response brief arguing that Unity and Trinity's programs were not HCSMs under Georgia law but were instead insurance plans, even going so far as contending that their positions were essentially undisputed. (Doc. 26 at 5-23.) Having improperly injected merits issues

---

[1] Plaintiffs claim they did challenge the delegation clause directly in their response. (Doc. 30 at 13 (citing Response, Doc. 26 at 27 n.13).) Aliera previously established why this challenge lacked any plausible basis and was foreclosed by binding precedent. (Doc. 28 at 10-15.)

into a case dealing with arbitrability, Plaintiffs should not be heard to complain when Aliera, out of an abundance of caution, demonstrated through admissible evidence that Unity and Trinity's programs complied with Georgia's HCSM laws and were not insurance in any event.[2]

### C. Plaintiffs' New Arguments to Avoid the Delegation Clause Rely on Distinguishable Cases They Could Have Cited Previously.

Using the *Jackson* decision as an excuse, Plaintiffs launched into a 12-page discussion of why this Court should not follow its own cases, as well as those from the Supreme Court and the Eleventh Circuit, in enforcing the delegation clause in the operative arbitration agreements. (Doc. 30 at 2-14.) But all of the cases Plaintiffs now cite were on the books when their response was filed and could have been cited then. Plaintiffs offer no justification for this failure. But, in any event, none of these cases supports a ruling overriding the parties' clear and unmistakable agreement that an arbitrator has to decide all arbitrability questions.

---

[2] The contrast in the "proof" on this "insurance" issue is revealing. While Aliera relied on declarations admissible under 28 U.S.C. § 1746, Plaintiffs largely relied on statements in unverified complaints, consent orders involving no resolution of contested facts or arguments, or findings derived from a preliminary injunction hearing, which are always based on an incomplete record and subject to change once further factual development occurs in the case. 11A Wright & Miller, *Federal Practice and Procedure* § 2950 (3d ed. 2020).

### *1.     Transportation Worker Exemption*

While clearly established at the time they filed their response brief, Plaintiffs waited until their proposed surreply to rely on cases construing the exemption found in Section 1 of the FAA for transportation workers in an effort to override the delegation agreements. (Doc. 30 at 6-10.) They offer no reason why they did not previously cite those cases. But even if they had, those cases provide no justification for the "late-to-the-party" challenges to the delegation clauses at issue here.

The Section 1 "transportation worker" exemption from the FAA's reach does not apply here for the obvious reason that Plaintiffs aren't transportation workers as defined in that Section. Nor does the analysis of those cases translate to this case. Those cases rest entirely on the sequencing of the FAA's various provisions. "Sections 1, 2, 3 [and 4] are integral parts of a whole.… [Sections] 1 and 2 define the field in which Congress was legislating, and §§ 3 and 4 apply only to contracts covered by those provisions." *New Prime, Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019) (brackets in original) (quoting *Bernhardt v. Polygraphic Co. of Am.*, 350 U.S. 198, 201-02 (1956)). As *New Prime* makes clear, a court considering a motion to compel arbitration must first determine if the arbitration clause appears in "'a contract evidencing a transaction involving commerce' consistent with § 2. And only if the contract in which the clause appears doesn't trigger § 1's 'contracts of

5

employment' exception." *Id.* at 538. *Accord In re Van Dusen*, 654 F.3d 838, 843 (9th Cir. 2011) ("A district court's authority to compel arbitration arises under Section 4 of the FAA … [but] a district court has no authority to compel arbitration under Section 4 where Section 1 exempts the underlying contract from the FAA's provisions."); *Oliviera v. New Prime, Inc.*, 857 F.3d 7, 14 (1st Cir. 2017) ("issue of whether the § 1 exemption applies presents a question of 'whether the FAA confers authority on a district court to compel arbitration' and not a question of arbitrability") (citation omitted), *aff'd,* 139 S. Ct. 532 (2019).

Here, this Court must initially determine whether the parties' transactions involved interstate commerce – an easy task since Plaintiffs do not dispute this point. (*See* Doc. 12 at 21-22; Doc. 26.) Then, because there is no field of operation for § 1's "transportation worker" exemption from the FAA, this allows "an arbitrator to decide even the initial question whether the parties' dispute is subject to arbitration." *New Prime*, 139 S. Ct. at 538. Once it is clear (as here) that the FAA applies, then normal contract rules demand that the parties' delegation of all arbitrability issues to the arbitrator must be enforced. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002).

Plaintiffs' challenges based on Georgia's statutory ban on arbitration provisions in insurance contracts are simply not on the same plane as Section 1's

6

exemption from the FAA for transportation workers. Challenges based on the Georgia statute are in essence challenges to enforceability of an arbitration agreement, which are the types of "arbitrability" challenges that the Supreme Court and the Eleventh Circuit have concluded may be delegated to the arbitrator. *See Rent-A-Center*, 561 U.S. at 70-72; *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1144 (11th Cir. 2015). Section 1 challenges seek an antecedent determination that the FAA does not even govern the parties' agreements. This is an entirely different and inapplicable analysis.

### 2. *Prospective Waivers and Illusory Arbitration Process.*

Plaintiffs also cite cases from other jurisdictions, all of which were available at the time they filed their response, that supported challenges to the delegation clauses in the arbitration agreements at issue. As explained below, the reasons the courts in those cases upheld challenges to the delegation clauses are simply not present here.

Plaintiffs cite to the Fourth Circuit's decision in *Gibbs v. Haynes Investments, LLC*, 967 F.3d 332 (4th Cir. 2020), as a roadmap for this Court to follow in determining arbitrability issues as opposed to referring them to the arbitrator. But even a cursory review of *Gibbs* reveals that it turned on factors not present here. In that case, after recognizing the general rule that courts must enforce provisions

7

delegating arbitrability issues to the arbitrator, *id.* at 337, the court accepted a challenge to the delegation clause because the parties' agreement clearly operated as a prospective waiver of the plaintiff's right to pursue certain statutory remedies in arbitration. "[B]ecause the language of both sets of arbitration agreements provides that tribal law shall preempt the application of any contrary law, and the effect of such provision is to thereby make unavailable to the borrowers the effective vindication of federal statutory protections and remedies, the arbitration agreements at issue amount to a prospective waiver … [and are] unenforceable." *Id.* at 344 (footnote omitted) (citations omitted).

Likewise, in *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 227 (3d Cir. 2018), the Third Circuit also accepted a challenge to a delegation clause in the parties' arbitration agreements because the plaintiffs were able to show that "there is no arbitration forum in which an arbitrator could evaluate whether the arbitration agreement is enforceable." The Third Circuit reached this conclusion because the arbitration agreement "requires the [Cheyenne River Sioux] Tribe's involvement in the arbitration, but … such a tribal arbitration forum does not exist." *Id.* Thus, the delegation clause failed because it was illusory.

The critical distinction in those cases is that the challenge to the delegation clause could be readily resolved without having to plod through the merits of the

underlying case based on a limited record – the task Plaintiffs ask this Court to shoulder here. In both, the court determined that the delegation clause was unenforceable because it clearly operated as a waiver of prospective federal rights or remedies (*Gibbs*), or because it was completely illusory since it required tribal involvement in arbitration when the tribe did not participate in (and actually opposed) arbitration (*MacDonald*). In neither case did the courts tackle the underlying merits of the parties' claim. Even the cases Plaintiffs cite warn courts not to go that far. *See, e.g.*, *In re Van Dusen*, 654 F.3d at 845-46 ("district courts have been instructed to consider only the validity and scope of the arbitration agreement itself when addressing whether a question is arbitrable, and to avoid entanglement with the merits of the underlying claims") (citations omitted).

The *Gibbs* decision also emphasized a key distinction that is present here but was absent in *Gibbs*. In that case, the court was able to determine from the parties' choice-of-law provision that there was a prospective waiver of federal statutory rights, so both the arbitration agreement and the embedded delegation clause were unenforceable. But the *Gibbs* court was quick to emphasize that a different result must occur if there was <u>uncertainty</u> about whether the choice-of-law clause called for a waiver of federal statutory rights.

> When there is uncertainty whether the foreign choice of law would preclude otherwise applicable federal substantive statutory remedies,

9

> the arbitrator should determine in the first instance whether the choice of law provision would deprive a party of those remedies. In those instances, the prospective waiver issue would not become ripe for final determination until the federal court was asked to enforce the arbitrator's decision. However, where there is no uncertainty about the effect of those choice-of-law provisions, the court may properly conclude the delegation provision – and thus the arbitration agreement – is unenforceable.

*Gibbs*, 967 F.3d at 340 (citations omitted). *Accord Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 540-41 (1995).

Even if Plaintiffs had argued that the delegation clause here amounts to a prospective waiver of substantive federal statutory rights (which they did not), applying the *Gibbs* decision in this case would yield the opposite result Plaintiffs seek. Because there is at a minimum uncertainty about the legal effect of the delegation clause, *Gibbs* teaches that the arbitrator must resolve this uncertainty, not the Court.

### D. Plaintiffs Should Not File a Surreply to Elaborate on Prior Authority and Argument.

In their Response, Plaintiffs cited to the Fourth Circuit's decision in *Minnieland Private Day School, Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449 (4th Cir. 2017), discussing its holding in a one-line string cite for the proposition that a "court decides the legality of arbitration where

challenged." (Doc. 26 at 26.) Aliera responded to this brief discussion of *Minnieland* in a footnote. (Doc. 28 at 18 n.7.)

Now, after the briefing has closed, Plaintiffs elevate *Minnieland* to their centerpiece argument. They devote several pages in their proposed surreply in an attempt to argue that *Minnieland* controls the legal issues involved here. (Doc. 30 at 2-4, and 13 n.4.) This is not a proper basis for a surreply. Courts uniformly reject proposed surreply briefs where the party seeks to elaborate on the same arguments previously made. *See Colonial Pipeline Co. v. AIG Specialty Ins. Co.*, No. 1:19-cv-00762, 2019 WL 9607651, at *3 (N.D. Ga. Aug. 5, 2019) (where a reply merely responds to arguments in the response brief and does not advance new arguments, or where the motion for surreply does not specifically identify the new arguments to be addressed, the court should deny the motion for surreply); *Williams v. Columbus Bar Ass'n,* No. 1:12-cv-04382-RWS, 2013 WL 1963822, at *1 (N.D. Ga. May 8, 2013) ("surreplies typically will be permitted by the Court only in unusual circumstances, such as where a movant raises new arguments or facts in a reply brief, or where a party wishes to inform the Court of a new decision or rule implicating the motion under review"). If Plaintiffs truly believed *Minnieland* was so crucial to the Court's analysis, they should have devoted more than one throw-away sentence discussing the opinion in their Response.

Finally, Plaintiffs repeat arguments they previously made in their Response: (i) Aliera can't enforce the arbitration agreements (specifically, the delegation clause), and (ii) some of the claims are not covered by the arbitration agreements. (Doc. 30 at 14-15.) Neither argument is impacted by Judge Rothstein's decision in *Jackson* and neither is based on any newly-discovered evidence. Once again, a party should not be allowed to file a surreply to rehash the same arguments made in the response. *See, e.g., Access Point Fin., Inc. v. Ext-Indy Suites, LLC,* 1:15-cv-0002-RWS, 2016 WL 892240, at *1 (N.D. Ga. Mar. 9, 2016) (denying leave to file surreply or amend counterclaim and noting surreplies are reserved solely for exceptional circumstances).[3]

### E. Whether *Jackson* Properly Construed Ninth Circuit Law Is Not in Issue Here.

Plaintiffs devote four pages of their proposed surreply arguing that Judge Rothstein's decision in *Jackson* does not square with Ninth Circuit law. (Doc. 30 at 10-13.) Aliera does not see any benefit in this Court getting bogged down in a dispute with whether a Washington district court faithfully followed Ninth Circuit

---

[3] Plaintiffs' arguments in their proposed surreply, (Doc. 30 at 15-16), regarding the admissibility of the declaration testimony Aliera offered in this case, have no merit. Each declaration was properly authenticated. There is no challenge that the statements were not within the declarants' personal knowledge. And each statement involved factual matters, not legal conclusions or opinions.

12

precedent, and certainly not where the dispute is raised in a proposed surreply without the benefit of full briefing on the subject through the adversarial process. What is more important here is what the Eleventh Circuit has held. *See Parnell*, 804 F.3d at 1148-49 (a challenge that an arbitration agreement violated Georgia law had to be sent to the arbitrator where the plaintiff made no specific challenge to the delegation clause); *see also Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1264-65 (11th Cir. 2017) (the challenge must be to the delegation clause specifically (*e.g.*, it is itself unenforceable because of fraud, duress, or unconscionability), and the delegation clause will not be defeated where the challenge is really to the arbitration agreement as a whole).

In any event, should the Court decide it wants to undertake an analysis of Ninth Circuit law to assess whether Judge Rothstein got it right in her *Jackson* decision, it need look no further than *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In *Brennan*, the plaintiff sought to avoid an arbitrator's determination of arbitrability by claiming that the arbitration agreement in its entirety was unconscionable. 796 F.3d at 1133. Like Plaintiffs here, the plaintiff in *Brennan* maintained this was enough to challenge the delegation clause that was embedded within the broader arbitration agreement. The Ninth Circuit disagreed, holding that under *Rent-A-Center* there had to be a separate unconscionability

challenge to the delegation clause itself. *Id.* Because the plaintiff failed to make the case for unconscionability of the delegation clause, an arbitrator had to decide all arbitrability questions. *Id.*

Not only was Judge Rothstein's decision supported by the Supreme Court's decision in *Rent-A-Center* and the Ninth Circuit's decision in *Brennan*, but its reasoning is logically sound and applies here as well. Georgia's statutory ban on arbitration clauses in insurance contracts exists to protect the jurisdiction of Georgia courts concerning disputes over insurance agreements. Having an arbitrator determine whether insurance is involved in the first place does not undermine the policies underlying the statute. If the arbitrator decides that what Unity and Trinity offered was not insurance, for example because those sharing programs qualify as a HCSM or because there is no contract of indemnity, then this decision does not implicate O.C.G.A. § 9-9-2(c)(3) or violate its underlying policies. And, of course, the arbitrator's decision would be subject to judicial review. *See* 9 U.S.C. § 10. On the other hand, if the arbitrator determines the Unity and Trinity programs are insurance, then the case will return to court for a determination of whether Plaintiffs have any viable insurance-related claims. In that case, the aims of the Georgia statute would be fully vindicated—a court decides the merits of the insurance dispute, not an arbitrator.

## IV. CONCLUSION

Both the Federal Rules and Local Rules contemplate a motion, an opposition brief, and a reply in order to limit the prospect of "an endless volley of briefs." While certain narrow circumstances may present exceptions to warrant a surreply, those circumstances do not include a desire to expand on legal authority that could have been raised in an opposition brief, or to rehash the same arguments in a different way. Thus, Plaintiffs' motion for leave to file their surreply should be denied.

/s/ Sarah R. Craig
Sarah R. Craig
Georgia Bar No. 463578
Primary Email: scraig@burr.com
BURR & FORMAN, LLP
One Tampa City Center
201 North Franklin Street, Ste. 3200
Tampa, Florida 33602
Telephone: (813) 367-5766
Facsimile: (813) 221-7335
*Counsel for Defendant,*
*The Aliera Companies Inc.*

## CERTIFICATE OF COMPLIANCE

Counsel certifies that brief has been prepared using Times New Roman 14, one of the font and point selections approved by the Court in LR 5.1.

/s/ Sarah R. Craig
Sarah R. Craig

## CERTIFICATE OF SERVICE

A copy of the foregoing **DEFENDANT ALIERA'S OPPOSITION TO MOTION FOR LEAVE TO FILE SURREPLY** has been filed this 28th day of September, 2020 via the Court's CM/ECF system, which will send notification of such filing to all parties of record.

/s/ Sarah R. Craig
OF COUNSEL